# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN


===============

## NO. 03-00-00243-CR
===============


**Edward Bell, Appellant**


**v.**


**The State of Texas, Appellee**


=====================================================================
**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
NO. B-98-0433-S, HONORABLE DICK ALCALA, JUDGE PRESIDING**
=====================================================================


Appellant Edward Bell appeals his conviction for capital murder. Tex. Pen. Code Ann. § 19.03(a)(3) (West 1994). After the jury found appellant guilty, the trial court assessed punishment at life imprisonment, the State having waived the death penalty.


## Points of Error

Appellant advances three points of error. First, appellant challenges the legal sufficiency of the evidence to support his conviction for capital murder. Second, appellant urges that the trial court erred in overruling his objection to an application paragraph of the jury charge relating to parties in this capital murder case for remuneration. Appellant contends that he could not be guilty

as a party when the primary actor, Luis Ramirez, was not guilty of this aggravated element (remuneration) of the offense charged. Third, appellant contends that under Rule 403 of the Texas Rules of Evidence, the trial court erred in admitting into evidence a handwritten note of Luis Ramirez found in appellant's wallet because its probative value was outweighed by the danger of unfair prejudice and the needless presentation of cumulative evidence. We will affirm the conviction.

### Indictment

The indictment in pertinent part charged that appellant on or about April 8, 1998 "did then and there intentionally cause the death of an individual, namely, Nemecio Nandin, by shooting the said Nemecio Nandin with a deadly weapon, to wit: a firearm, for remuneration and the promise of remuneration from Luis Ramirez."

### Background

The facts of the case are important in view of appellant's claim that the evidence is legally insufficient to sustain the capital murder conviction, and to place the other points of error in proper perspective.

On April 16, 1998, the decomposing body of twenty-nine year-old Nemecio Nandin was found buried in a shallow grave near the home of Richard and Lana Riordon on a fifty-acre tract between Orient and Tennyson in far northeast Tom Green County. The medical examiner determined that the cause of death was two shotgun blasts to the head, at least one of which was caused by a twenty-gauge shotgun.

Nandin was a firefighter for the San Angelo Fire Department. His off-duty business was repairing washing machines and dryers. Nandin was last heard from around noon on April 8, 1998, when he called his girlfriend, Carla[1] Bewick, to tell her he was headed to a business call to repair a washer and a dryer, and that he would call her when he got back into San Angelo that evening. Bewick, who testified that her relationship with Nandin was an on-again, off-again one, related that when Nandin did not call as promised and did not respond to her calls to his cell phone or pager, she became concerned. Later in the day, when she went to the Wal-Mart store on North Bryant Street in San Angelo, she saw Nandin's pick-up truck with a washer and dryer parked near the rear of the store. The truck was unlocked. Nandin was not to be found in the store. When Bewick returned to the store later in the evening, the truck was still there. She was unable to contact Nandin the next morning at the fire department. He had not reported for work. His co-workers organized a search. As noted, his body was found on April 16, 1998.

Dawn Ramirez Holquin had remarried after the offense but prior to the time of the trial. She testified that she married Luis Ramirez in 1985. They had two children and lived in Las Vegas, Nevada, before moving to San Angelo in 1992. She related that Luis was an angry, jealous, and domineering man who had to be in control of everything; that their marriage was very turbulent, very violent and "not happy"; and that she got a divorce in November 1995. Dawn testified that she

---

[1] The name was also spelled "Karla" in the record.

did not date for a long period after the divorce because of Luis's jealousy. He told her that "it drove him crazy to think that you are with other men."

Dawn related that she first met Nemecio Nandin in June 1995 when he repaired her dryer. She encountered him again in October 1997 when he came to the Town and Country store, where she was employed, to purchase hot chocolate. He called her at work that evening to thank her for the hot chocolate. Luis was in the store at the time. She and Nandin began dating. Dawn decided to move to Austin to get away from Luis. On Saturday, December 20, 1997, Nandin came by her San Angelo home at 7:30 a.m. to tell her goodbye. While Nandin was there, Luis began telephoning, telling Dawn to get rid of whomever was there. She learned that Luis was calling from a grocery store two blocks away. After Luis had called seven or eight times, Nandin took the phone and told Luis to leave Dawn alone and that her life was none of Luis's business. Later, Dawn heard a noise and opened the front door to find her children there. She saw Luis driving away. It was Luis's weekend with the children and he had only picked them up the night before.

Dawn revealed that she saw Nandin again on December 26, 1997, when she brought the children to San Angelo for their visitation with their father; that on the last week-end in March 1998 Nandin came to Austin to see her; that the following week-end in early April 1998, her children returned from their visitation with their father; that her daughter reported that her father (Luis) had become upset when told the children liked Nandin; and that Luis had stated he would take care of the problem. Dawn related that Luis had once told her that "if he found out that I was with another man, he would kill him and then come after me."

4

From around Thanksgiving Day of 1997 until the early part of April 1998, appellant Bell, his girlfriend, Lisa McDowell, and a young child lived with the Riordons on their property near the Tennyson Road where Nandin's body was later found. Due to the objections of the Riordons' landlord, appellant, McDowell, and the child moved in with Timothy and Nicole Hoogstra in their house in San Angelo. Hoogstra and appellant had been co-workers on several different construction sites. Neither appellant nor McDowell had jobs at the time they moved. Shortly after the move when Hoogstra was working on his truck, appellant told him that a man named "Luis" was going to hire him (appellant) to kill a fireman for $1,000.00. Later, appellant told Hoogstra that he "had done it" and to watch for it on the news. When Hoogstra learned that Nandin, a fireman, was missing, he questioned appellant about the matter. Appellant told Hoosgstra that "they" (appellant Bell and Luis Ramirez) had lured Nandin to a location on Tennyson Road to service a washer and dryer; that "they" put a gun to Nandin's head and placed handcuffs on Nandin; and that "they" blew Nandin's brains out with a shotgun and buried Nandin's body behind a chicken house. Appellant explained that the ground was "real hard," Nandin was a big man, and they had a difficult time in burying the body. Hoogstra recalled that appellant "giggled" when relating that "they" blew the fireman's brains out. While appellant did not specifically say who fired the shots, he later told Hoogstra that Luis Ramirez had pulled the trigger. Appellant explained that he and Luis had done this to Nandin because the fireman was seeing Luis's wife, or Luis was seeing the fireman's wife, "one way or the other."

Appellant also told Hoogstra that after the burial, he put on gloves and drove Nandin's pick-up truck back to San Angelo and parked it at the rear of the old Wal-Mart store on North Bryant. Appellant left the washer and dryer in the truck, but threw away Nandin's cell phone and

5

pager.  Later, appellant gave Hoogstra a pair of handcuffs which he said had been used on Nandin. After appellant left for Tyler, Hoogstra gave the handcuffs to the police.  These handcuffs were shown to be the same brand of handcuffs purchased by Luis Ramirez in 1991 in Las Vegas, Nevada, where Ramirez worked briefly as a security guard.

On April 14 or 15, 1998, Hoogstra went with Lee Westerman to do construction work on a lake house in Brownwood.  Hoogstra told Westerman of his conversation with appellant. Westerman had Hoogstra call Crime Stoppers from Brownwood.  Either that day or another in April when Westerman brought Hoogstra home, Westerman met appellant.  Appellant told Westerman that the police had been at Hoogstra's home that day, and he did not know whether it was because of a fight with his girlfriend, or whether it was for the "other thing" that would "get him either life or death in prison."

Lisa McDowell, appellant's girlfriend, related that early on the morning of April 8, 1998, she and appellant had gone to the Riordons' home on Tennyson Road to pick up some clothes they had left behind when they moved.  After the Riordons went to work, she got into an argument with appellant.  She left him behind and took her infant son and drove to her aunt's house in San Angelo.  That afternoon, Luis Ramirez dropped appellant off at the aunt's house.  Appellant and McDowell then drove to the Miles High School to pick up the Riordon children from school as McDowell had promised.  On the way, McDowell observed appellant throw a latex glove or gloves out of the car window.  Sometime later, McDowell returned to this particular stretch of highway with police officers.  A latex glove was found as well as the keys to Nandin's pick-up truck.

6

On April 16, 1998, appellant and McDowell left San Angelo for Tyler. He supposedly had a construction job in the area. Appellant had $200 which he told McDowell had been given to him by Luis Ramirez. Appellant was arrested in a trailer park near Whitehouse, south of Tyler. Appellant and McDowell both signed consent forms giving the officers permission to search the Mercury Cougar automobile in which they had traveled. In the search, the officers found appellant's wallet near the front seat. In it were two business cards of Luis Ramirez, and a handwritten note containing directions to two residences in Austin and descriptions of three motor vehicles. According to Dawn Ramirez Holquin, Ramirez's ex-wife, the note was in Luis Ramirez's handwriting and the residences and vehicles described belonged to her and her uncle.

In the trunk of the searched automobile, a pair of Bugle Boy jeans were found. After testing, it was determined that the DNA from the blood stains on the jeans matched the DNA of the deceased, Nemecio Nandin. Ginger Herring, Luis Ramirez's girlfriend, testified that Ramirez owned a pair of Bugle Boy jeans. McDowell testified that when she and appellant were throwing things into a trash dumpster before leaving San Angelo, she found the jeans in the trunk of the car, that they were not appellant's, but he would not let her throw them away.

A search of the Riordon house uncovered three shotguns—two twenty-gauge shotguns and one sixteen-gauge shotgun. Lana Riordan testified that the two twenty-gauge shotguns were in working order, but not the sixteen-gauge shotgun. She related that appellant and McDowell had arrived at her house early on the morning of April 8, 1998, and when she returned that evening one of the twenty-gauge shotguns had been moved from its regular place and left in another room.

7

After his arrest, appellant wrote a letter to McDowell from the Tom Green County jail. McDowell kept the letter two months before revealing it to a friend. The letter was introduced into evidence describing, *inter alia*, how Nandin was killed by Ramirez in appellant's presence, how the body was buried, how he was given money by Ramirez which had been taken out of Nandin's wallet, and how he drove Nandin's truck to the Wal-Mart store. Appellant relied upon some of the self-serving statements in the letter introduced by the State to support his defense of duress. Appellant offered no defensive testimony.

## Jury Charge—Parties

In submitting the case to the jury, the trial court *inter alia*, instructed the jury abstractly on the law of parties. In paragraph 4, an application paragraph, the trial court charged the jury on capital murder in accordance with the allegations of the indictment. Then separating the paragraph with an "OR," the trial court applied the law of parties to the capital murder. In paragraph 5, the trial court likewise submitted the lesser included offense of murder in the same fashion. The trial court also charged the jury on the affirmative defense of duress.

## Legal Sufficiency

In his first point of error, appellant contends that the evidence is legally insufficient to support the capital murder conviction because (1) the evidence is legally insufficient to show that "he was the triggerman," and (2) insufficient to show his guilt as a party "because there was no evidence that the principal, Luis Ramirez, committed the murder for remuneration." By his expressed contention, appellant challenges only the legal sufficiency of the evidence.

8

## The Standard of Review

The standard for reviewing the legal sufficiency of evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.—Austin 1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Green v. State,* 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). The State may prove its case by circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable doubt. *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.—San Antonio 1998, no pet.) (citing *Jackson*, 443 U.S. at 319). The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). It is important to remember that all the evidence the jury was permitted, properly or improperly, to consider must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.).

The jury is the exclusive judge of the facts proved, the weight to be given the testimony, and the credibility of the witnesses. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The jury is free to accept or reject any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

The jury maintains the power to draw reasonable inferences from basic facts to ultimate facts. *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.); *Hernandez v. State*, 939 S.W.2d 692, 693 (Tex. App.—Fort Worth 1997, pet. ref'd). Moreover, the reconciliation of evidentiary conflicts is solely within the province of the jury. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Rather, it is to position itself as a final due process safeguard insuring only the rationality of the fact finder. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). It is not the reviewing court's duty to disregard, realign, or weigh the evidence. *Id.* The jury's verdict must stand unless it is found to be irrational or unsupported by more than a "mere modicum" of evidence, with such evidence being viewed in the *Jackson* light. *Id.* The legal sufficiency of the evidence is a question of law. *McCoy v. State*, 932 S.W.2d 720, 724 (Tex. App.—Fort Worth 1996, pet. ref'd).

**Law of Parties**

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Pen. Code Ann. § 7.01(a) (West 1994); *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996). Thus, under the law of parties, the State is able to enlarge a defendant's criminal responsibility to acts in which he may not be the primary actor. Tex. Pen. Code Ann. § 7.01(b) (West 1994); *Rome v. State*, 568 S.W.2d 298, 300 (Tex. Crim. App. 1997) (op. on reh'g); *Rosillo v. State*, 953 S.W.2d

10

808, 812 (Tex. App.—Corpus Christi 1997, pet. ref'd). The law of parties may be applied even though no such allegation is contained in the indictment. *Jackson v. State*, 898 S.W.2d 896, 898 (Tex. Crim. App. 1995); *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989); *Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978); *Howard v. State*, 966 S.W.2d 821, 824 (Tex. App.—Austin 1998, pet. ref'd).

Section 7.02 of the Texas Penal Code provides in pertinent part:

(a) a person is criminally responsible for an offense committed by the conduct of another if

* * *

(3) acting with intent to promote or assist the commission of the offense, he solicits encourages, directs, aids, or attempts to aid the other person to commit the offense.

Tex. Pen. Code Ann. § 7.02(a)(3) (West 1994).

The test for determining when an instruction should be submitted to the jury on the law of parties was set forth in *McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Crim. App. 1974), and quoted in *Goff*, 931 S.W.2d at 544-45. It need not be restated here. When the evidence is sufficient to support both the primary actor and party theories of liability, as in the instant case, the trial court does not err in submitting an instruction on the law of parties. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994); *Webb v. State*, 760 S.W.2d 263, 267, 275 (Tex. Crim. App. 1988); *Rosillo*, 953 S.W.2d at 814. Evidence is sufficient to convict under the law of parties if the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom*, 920 S.W.2d at 302; *Rosillo*, 953 S.W.2d at 814. Clearly, there was more

11

evidence here than encouragement by appellant Bell so as to constitute him a party, if in fact Luis Ramirez was the primary actor.

The trial court submitted the theory to the jury that appellant was the primary actor in killing Nandin for remuneration as alleged in the indictment. In the alternative, the trial court submitted the theory of parties if the jury found that Luis Ramirez was the primary actor and that appellant for remuneration aided Ramirez in the killing.

The jury returned a general verdict—"We, the jury find the defendant EDWARD BELL, guilty of CAPITAL MURDER as charged in the indictment."

Appellant argues, however, that the evidence is insufficient to show that he was the primary actor as alleged. Appellant told Hoogstra that he had been hired to kill a fireman for $1,000. He later told Hoogstra that "he (appellant) had done it" and to watch the news. Still later, appellant told Hoogstra that "they" had lured Nandin to the location of the killing, "they" had handcuffed Nandin, and "they" had blown Nandin's brains out with a shotgun. Nandin died from two shotgun blasts, one of which was a twenty-gauge shotgun. The medical examiner, because of the body's condition, could not determine what type of shotgun inflicted the other wound. Two twenty-gauge shotguns in working condition were found at the location of the murder. The medical examiner was unable to determine if the same shotgun was used to inflict both wounds. The deadly blasts could have been fired from separate shotguns, one by appellant and one by Ramirez, or could have been fired by the same shotgun. The jury as the trier of fact could have found that appellant was a primary actor. In fact, the jury could have found from the evidence that appellant and Ramirez were both primary actors. It was only later that appellant told Hoogstra that Ramirez pulled the trigger. This

12

fact was reiterated in appellant's jail letter to McDowell. The jury was not required to accept this evidence that Ramirez was the lone gunman. Given all the circumstances, we reject appellant's claim that the evidence was insufficient for a rational jury to find beyond a reasonable doubt that appellant was a primary actor in this capital murder.

Appellant also urges that if the evidence was sufficient to show that he was a party to the offense for remuneration, the evidence is insufficient to show that he was guilty of *capital* murder. Appellant argues that this is so because the indictment's allegation of an aggravating element making murder a capital offense was remuneration or the promise of remuneration.

Appellant contends that the primary actor was Ramirez and that the court's charge did not require the jury to find that Ramirez murdered Nandin for remuneration or the promise of remuneration, and that without that requirement and a finding by the jury, the offense was not a capital offense. Therefore, appellant asserts that if he is guilty as a party to the offense, it is not a capital offense of which he is guilty and that the conviction imposed cannot stand. Appellant overlooks the law of parties and the fact that section 19.03(a)(3) provides that a person who commits murder and "commits the murder for remuneration or the promise of remuneration *or employs another to commit the murder for remuneration or the promise of remuneration*" is guilty of capital murder. Tex. Pen. Code Ann. § 19.03(a)(3) (West 1994). (Emphasis added.) We do not understand appellant to challenge the remuneration issue. In this regard, appellant cites no authorities and there is no argument except that inherent in his assertion. This briefing fails to comply with Rule 38.1(h) of the Texas Rules of Appellate Procedure.

When different theories are submitted to the jury in the disjunctive as in the instant case, a general verdict is sufficient if the evidence supports one of the theories. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992); *Kitchens v. State*, 823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991); *see also Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999); *Rabbani v. State*, 847 S.W.2d 555, 558-59 (Tex. Crim. App. 1995). We conclude that a rational jury could have found beyond a reasonable doubt all the essential elements of the offense charged under either of the two theories submitted to the jury. The first point of error is overruled.

**Jury Charge Error Claimed**

In his second point of error, appellant contends that the "trial court committed reversible error by overruling appellant's objection to the application paragraph of the charge." In his brief, appellant directs us to the application of the law of parties to the facts in the second part of paragraph 4 of the jury charge. Appellant, in his trial objection, contended that the State was not entitled to a charge on the law of parties, that appellant was entitled to a "straight up" charge—"he either did capital murder or he did not, under this indictment." Appellant's argument was that he was charged with capital murder for remuneration or promise of remuneration and that Luis Ramirez, the primary actor in any parties charge, was not shown to have committed murder for remuneration or promise of remuneration. Therefore, appellant contends that he could not be a party to the offense committed by Ramirez. This is the same contention that appellant advanced in his challenge to the sufficiency of the evidence. Murder is defined in section 19.02(b)(1). Tex. Pen. Code Ann. § 19.02(b)(1) (West 1994). Murder becomes capital murder if it is committed under certain circumstances, limited and set forth in section 19.03. *Id*. § 19.03. Appellant was charged under

14

section 19.03(a)(3) which provides that murder becomes a capital offense if "the person commits the murder for remuneration or promise of remuneration *or employs another to commit the murder for remuneration of promise of remuneration*." (Emphasis added.) As noted earlier, the law of parties may be applied even without any parties allegation in the indictment. *Pitts*, 569 S.W.2d at 900. There was evidence that Ramirez employed appellant to murder Nandin for remuneration or promise of remuneration, thus indicating his guilt under the very same subsection of section 19.03 under which appellant was charged. In addition, the evidence shows Ramirez was a primary actor in the murder of Nandin along with his hired help—appellant.     Appellant cites no authorities supporting his contention[2] and his argument is of little persuasion. We find no error in the trial court's action in overruling the objection to the jury charge. The second point of error is overruled.

**The Note**

In the third point of error, appellant contends that the "trial court erred in admitting into evidence an extraneous offense or bad act, in violation of Rule 403 of the Rules of Evidence." Despite the language, appellant presents an issue under Rule 403, not Rule 404(b).[3] Appellant has reference to the introduction of a handwritten note found in appellant's wallet during the search of the Mercury Cougar automobile in east Texas when appellant was arrested.

---

[2] Appellant does cite *Hutch v. State*, 922 S.W.2d 166, 170-71 (Tex. Crim. App. 1996), for the nature of errors which result in "egregious harm." "Egregious harm" applies to a review of charge error which was not preserved by timely objection. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Here, appellant timely objected to the court's charge.

[3] Tex. R. Evid. 404(b).

15

Before the jury, Jack Allen, Special Investigator of the Texas Department of Public Safety, identified the note on a yellow piece of paper and two business cards of Luis Ramirez as being found in the wallet. When the State sought to introduce the note into evidence during the re-direct examination of Dawn Ramirez Holquin, a hearing in the absence of the jury was conducted. The trial court overruled appellant's Rule 403 objection and his subsequently urged Rule 404(b) objection.

Appellant complains that the introduction of the note "permitted the jury to speculate about an unaccomplished extraneous offense, the murder of Luis Ramirez's ex-wife." Appellant relies upon the note and a threat made by Ramirez to his ex-wife, Dawn. Appellant concedes, however, that the note is relevant evidence.[4] He argues that in light of Rule 403 the note's probative value was outweighed by the danger of unfair prejudice and the needless presentation of cumulative evidence.

The note in question, which was in the handwriting of Ramirez according to Dawn, gave highway directions from Brady to Austin and further directions to two different street addresses in Austin and a general description of three motor vehicles. Dawn testified that the street addresses were those of her home and her uncle's home. Two of the vehicles described belonged to Dawn's uncle and the other was hers.

Dawn had earlier testified that Ramirez had told her it drove him crazy to think of her with another man, and that if he found her with another man that he would kill him "and come after her."

---

[4] Appellant's brief states:

The note itself was undoubtedly relevant evidence establishing a link between Ramirez and appellant.

16

Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence.

Tex. R. Evid. 403

> The factors listed in Rule 403 are the only ones to be balanced against probative value. The absence of "such as" or a similar introductory phrase indicates that the listed factors are not merely examples. The first three factors—unfair prejudice, confusion and misleading—are termed "dangers," whereas delay and cumulativeness are referred to as "considerations." The former are weightier because they threaten the integrity of the fact-finding process, whereas the latter are concerned with efficiency.

2A Steven Goode, et al., *Texas Practice: Courtroom Handbook on Texas Evidence* 283 (2001 ed.).

Rule 401 defines "relevant evidence." Tex. R. Evid 401.[5] Rule 402 pronounces all relevant evidence admissible unless barred by certain constitutional and statutory provisions. Tex. R. Evid. 402. Rule 403 places discretion in the trial court to temper somewhat the breadth of Rule 402. The trial court is authorized to weigh the probative value of relevant evidence against the countervailing dangers and considerations set forth in Rule 403. Rule 403 favors the admissibility of evidence in close cases in keeping with the presumptions of admissibility of relevant evidence.

---

[5] Rule 401 states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

17

*Moreno v. State*, 22 S.W.3d 482, 487 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 389); *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). The standard of review of a trial court's decision under Rule 403 is an abuse of discretion. The trial court's ruling will be upheld so long as it is within "the zone of reasonable disagreement." *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996); *see also Moreno*, 22 S.W.3d at 487; *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd).

### Unfair Prejudice

We turn now to appellant's claim that the probative value of the note was substantially outweighed by the danger of unfair prejudice. Any evidence presented by the prosecution will generally be prejudicial to the defendant in a criminal case. *Wyatt v. State*, 25 S.W.3d 18, 26 (Tex. Crim. App. 2000); *Ford v. State*, 26 S.W.3d 669, 675 (Tex. App.—Corpus Christi 2000, no pet.). "In one sense, almost every piece of evidence introduced at trial can be said to be prejudicial to one side or the other." *Blakeney v. State*, 911 S.W.2d 508, 516 (Tex. App.—Austin 1995, no pet.). Consequently, only evidence that is *unfairly* prejudicial is excluded. *Cabellero v. State*, 919 S.W.2d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Blakeney*, 911 S.W.2d at 516. Unfair evidence is that evidence which has an undue tendency to suggest a decision be made on an improper basis, commonly an emotional one. *Montgomery*, 810 S.W.2d at 389; *Ford*, 919 S.W.2d at 922.

Appellant contends that the note in Ramirez's handwriting and found in appellant's possession, when taken with Ramirez's threat to Dawn, could have caused the jury to speculate a second conspiracy was afoot. Thus, the introduction of the note resulted in unfair prejudice. The note was not signed and not dated. It was not addressed to anyone. Dawn moved to Austin in

18

December 1997. She testified that Ramirez had visitation rights with their children and he had returned them to Austin one weekend. Dawn related that Nandin visited her in Austin the last weekend in March 1998 before his death on April 8, 1998. The time of the threat against all of Dawn's boyfriends was not established, but it was apparently after the Ramirez divorce in 1995.

Appellant urges that we apply the four-pronged relevance criteria set forth in *Montgomery*, 810 S.W.2d at 389-91, for determining whether the probative value of an extraneous offense is substantially outweighed by the danger of unfair prejudice. Appellant overlooks the fact that the introduction of the note, even taken together with the earlier threat by Ramirez, does not constitute an extraneous offense by appellant Bell[6] to which the relevance criteria would apply.[7]

The probative value of the note found in appellant's wallet with Ramirez's business cards was not substantially outweighed by the danger of unfair prejudice.

## Cumulative Evidence

Unlike the "danger" of unfair prejudice, the "consideration" of the needless presentation of cumulative evidence found in Rule 403 is concerned with the efficiency of judicial proceedings rather than the threat of inaccurate decisions. *See Alvarado v. State*, 912 S.W.2d 199, 212-13 (Tex. Crim. App. 1998). "Cumulativeness" alone is not a basis for the exclusion of evidence under Rule 403. The rule speaks to the "needless presentation" of such evidence. In this regard, trial

---

[6] *See Brown v. State*, 6 S.W.3d 571, 575 (Tex. App.—Tyler 1999, pet. ref'd); *Conner v. State*, 891 S.W.2d 668, 671 (Tex. App.—Houston [1st Dist.] 1994, no pet.).

[7] Appellant acknowledges that subsequent to the introduction of the note, the trial court refused to admit the testimony of Ginger Herring, Ramirez's girlfriend to the effect that she overheard Ramirez and appellant talking about going to Austin and killing Ramirez's ex-wife, her uncle and possibly her mother. This disallowed evidence was never before the jury.

19

courts should be sensitive to a party's "right" to make its case in the most persuasive manner possible. *Etheridge v. State*, 903 S.W.2d 1, 20-21 (Tex. Crim. App. 1994); *see also generally* 1 Steven Goode, et al., *Texas Practice*: Texas' Rules of Evidence: *Civil and Criminal* § 403.2 (1993).

Cumulative evidence suggests that other evidence on the same point has already been received. But this alone is not a basis for exclusion. The cumulative effect of the evidence may heighten rather than reduce its probative value. Further, evidence that may be cumulative as to one point may not have that characteristic as to another material point. *Goode*, § 403.2.

In this "murder for hire scenario", the State bore the burden of proof beyond a reasonable doubt and the link between appellant and Ramirez was of vital importance. The strongest evidence of a link came from Hoogstra and appellant's jail letter introduced by the State. Appellant impeached and discredited Hoogstra by showing, *inter alia*, that Hoogstra had received hundreds of dollars from several law enforcement agencies early on in the investigation. Appellant also used statements in his jail letter to support his defense of duress. If it can be argued that appellant's possession of the note written by Ramirez was cumulative evidence of the link between the two, it was not inadmissible on the basis of needless presentation of cumulative basis. Moreover, the State urges that the note was admissible to rebut the defense of duress.

We conclude that the trial court did not abuse its discretion in overruling appellant's Rule 403 objection. The third point of error is overruled.

The judgment is affirmed.

_

                                      John F. Onion, Jr., Justice

Before Justices Kidd, Puryear and Onion[*]

Affirmed

Filed:   November 29, 2001

Do Not Publish

---

[*]    Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).