Perry White **BLAKENEY, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 03–94–00078–CR.

Court of Appeals of Texas, Austin.

Nov. 15, 1995.

F.N. "Trey" Brown, III, Burnet, for appellant.

Sam Oatman, District Attorney, Steve Keathley, Assistant District Attorney, Llano, for appellee.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

JONES, Justice.

This is an appeal from a conviction for aggravated sexual assault of a child. *See* Tex.Penal Code Ann. § 22.021 (West 1994).[1] A jury found appellant Perry White Blakeney guilty of the charged offense and assessed punishment at 99 years' imprisonment and a fine of $10,000. We will reverse the conviction and remand the cause to the trial court for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant lived next door to the seven-year-old victim and his parents. One morning near the end of October 1992, the parents discovered that the child was missing. After a search of the neighborhood, he was eventually found hiding under some weeds, partially unclothed, with some of his clothes scattered on the ground. According to his mother, the child was withdrawn and refused to talk. At some point, the child's disappearance was reported to the police. Although he had already been found, on November 2, 1992, Officer Saldana of the Burnet County Sheriff's Department began investigating the report of the missing child. At Officer Saldana's request, the parents went to the sheriff's office to discuss the events surrounding the child's disappearance. After thirty minutes of questioning by Officer Saldana and another thirty minutes of questioning by a Department of Human Services case worker, the child still had not revealed any information regarding the events of his absence. According to Officer Saldana, during both interviews the child's demeanor was fine until he was asked about his disappearance. Upon being asked about his disappearance, however, he became shy and withdrawn. No alle-

gation of sexual assault and no accusation that appellant had done anything wrong was made during either interview.

Nonetheless, Officer Saldana and Deputy Hollingsworth visited appellant's house later that day, because Officer Saldana had a "bad feeling" about the case. Before questioning began, appellant was given *Miranda* warnings. When questioned about the child's disappearance, appellant denied any knowledge of the incident. At some point during the interview, appellant told the officers that he was bisexual/homosexual and had been to prison before. Appellant also related that the child had once grabbed appellant's penis while he was cooking. On another day the child had disrobed and jumped in a wheelbarrow full of water, whereupon appellant had told him to get dressed and go home. Appellant also stated to the officers that it was "not his fault" and that the child was being "forward." At some point, the officers asked appellant if he would be willing to continue the interview at the Sheriff's Annex in Marble Falls. Appellant consented, and the interview continued at that location. Deputy Hollingsworth observed that, during questioning about the child's disappearance, appellant appeared to have an erection. Appellant denied having an erection and refused to answer any further questions. Officer Saldana returned appellant to his home. Immediately thereafter, Officer Saldana contacted the parents and asked them to bring the child back to his office the next morning.

The next day, Officer Saldana's attempts to question the child about appellant resulted in his crying and acting withdrawn. The child initially made no statements about appellant, but during a break told his mother that appellant had "touched [the child] on his penis, and [appellant] put his finger in [the child's] butt." Based on this information, appellant was arrested.

## DISCUSSION

### Date of Offense

 In his second point of error, appellant complains that there was insufficient

---

1. This offense occurred before September 1, 1994, and is governed by the law in effect at the time the offense was committed. Penal Code, 73rd Leg., R.S., ch. 900, § 1.18, 1993 Tex.Gen.

Laws 3586, 3705. Because the code amendments effective September 1, 1994, have no substantive effect on this offense, the current code is cited for the sake of convenience.

evidence to prove that the alleged offense occurred before presentment of the indictment.[2] The State must prove that a charged offense occurred prior to the indictment. *See Scoggan v. State*, 799 S.W.2d 679, 680 (Tex.Crim.App.1990). The State is not bound to prove the exact date of the commission of an alleged crime and may allege that a crime occurred "on or about" a given date. *See Thomas v. State*, 753 S.W.2d 688, 693 (Tex.Crim.App.1988). A conviction will be sustained if the State proves that the offense was committed before, on, or after the date alleged, so long as the date of the offense is before presentment of the indictment and the crime's occurrence is not so remote as to be barred by limitations. *See Scoggan*, 799 S.W.2d at 680 n. 3; *Gray v. State*, 726 S.W.2d 640, 643 (Tex.App.—Fort Worth 1987, no pet.).

The indictment, filed on December 15, 1992, alleged that the offense occurred "on or about the 24th day of October, 1992." At trial, none of the State's witnesses could pinpoint with certainty the exact date of the offense. However, all the testimony presented indicates that the offense occurred around the end of October or beginning of November 1992, well before presentment of the indictment. The victim's mother testified that the child's first outcry statement occurred on November 3, 1992. At that time, the child related to her the events of past occurrences of sexual assault at the hands of appellant. The victim's father testified that the child's absence for several hours one morning occurred in mid to late October. Although the child's own testimony is not precise as to when the sexual assault occurred, it does indicate that it took place

around the time that he was missing. Officer Saldana testified that the parents reported the child's absence on October 19, 1992, and that he began investigating the case a few days before November 2, 1992. We conclude that the record contains sufficient evidence for the trier of fact to find beyond a reasonable doubt that the charged offense occurred before presentment of the indictment. We overrule appellant's second point of error.

### Extraneous Crimes, Wrongs, or Acts

In his first point of error, appellant complains that the trial court erred in allowing the State to introduce in its case-in-chief evidence of alleged extraneous crimes, wrongs, or acts committed by appellant. Specifically, appellant complains of the admission of statements he made to investigating officers before his arrest that (1) he was bisexual/homosexual; (2) he had been in prison before; (3) one day the child had grabbed appellant's penis while he was cooking; (4) another day the child had disrobed and jumped in a wheelbarrow in front of appellant, and he had told the child to go home; and (5) the child was at fault because he was being forward. Appellant also complains of the investigating officer's testimony that appellant appeared to have an erection during questioning about the child's disappearance. Having properly objected at trial, appellant argues that all of the foregoing evidence should have been excluded by the trial court because it was irrelevant (Tex.R.Crim.Evid. 401, 402), because it constituted impermissible character evidence (Tex.R.Crim.Evid. 404(b)), and because its probative value was substantially outweighed by the danger of unfair prejudice (Tex.R.Crim.Evid. 403).[3]

---

2. Though appellant does not designate it as such, this point of error is, for all intents and purposes, a legal-sufficiency challenge. The critical inquiry on review of the legal sufficiency of the evidence to support a criminal conviction is whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. Thus, the relevant question in this case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the commission of the alleged crime occurred prior to presentment of the indictment. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979);

*Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim. App.1981).

3. Appellant makes a vague reference in his brief to article 38.22. Tex.Code Crim.P.Ann. art. 38.22, § 3 (West 1979). Article 38.22 provides that an oral statement of an accused that is made as a result of a custodial interrogation is admissible against the accused for the purpose of impeachment only when an electronic recording is made of the statement and certain authentication requirements are satisfied. *Id.* We do not believe that this issue is properly part of appellant's point of error. If it is, however, we conclude that appellant was not under custodial interroga-

■ The trial court has discretion to exclude or admit evidence. *Montgomery v. State,* 810 S.W.2d 372, 379 (Tex.Crim.App. 1990). An appellate court should not set aside the trial court's rulings absent a showing in the record that the trial court abused its discretion. *Id.*

*(a) Relevance.*

■ The Texas Rules of Criminal Evidence favor the admission of all logically relevant evidence. *Id.* at 375; Tex.R.Crim. Evid. 402. If evidence has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable, it is relevant. *Montgomery,* 810 S.W.2d at 387; Tex.R.Crim. Evid. 401. Establishing the relevancy of an extraneous act is only the first step, however, in the trial court's determination of whether the evidence should be admitted. *Rogers v. State,* 853 S.W.2d 29, 32 (Tex.Crim.App.1993) (opinion on reh'g); *Montgomery,* 810 S.W.2d at 375; Tex.R.Crim.Evid. 401. Relevancy is not an inherent characteristic, but arises from the relation of the evidence to a matter properly provable in the case. *Montgomery,* 810 S.W.2d at 375. If evidence tends to make an elemental fact more or less probable, or if it inferentially supports or challenges an elemental fact, it is relevant. *Id.* at 387; Tex.R.Crim.Evid. 401. Because reasonable persons may differ when determining whether a particular inference arises from a piece of evidence, we will not disturb the trial court's ruling as long as it is within the "zone of reasonable disagreement." *Rogers,* 853 S.W.2d at 32; *Montgomery,* 810 S.W.2d at 391. If logically relevant, the evidence will be admissible unless the opponent demonstrates that it should be excluded because of some other constitutional, statutory, or evidentiary provision, such as Rule 404. *Montgomery,* 810 S.W.2d at 391.

The State argues that because the sexual assault victim was male, evidence of appellant's bisexuality/homosexuality is relevant to show appellant's propensity to seek out a male child as a sexual partner. The evidence that appellant is at times attracted to males could arguably make it more probable that appellant would be inclined to sexually assault a male child *rather than a female child.* It does not necessarily follow, however, that because appellant is attracted to adult males he also seeks out male *children* as objects of his sexual desire. Because the sex of the child victim in the present case is consistent with appellant's sexual preference, however, we will assume without deciding that reasonable persons could differ when determining whether to accept an inference that a bisexual/homosexual is likely to seek out same-sex child partners. Based on that assumption, we will not disturb the trial court's ruling that this evidence had sufficient relevance to withstand a Rule 401 objection.

■ Appellant's statements that the child had grabbed appellant's penis, had disrobed and jumped in a wheelbarrow, and was being forward and was at fault, in addition to the officer's testimony regarding appellant's erection while being questioned about the child victim, all either inferentially support or challenge an elemental fact. These pieces of evidence all relate to appellant's past relationship with or possible attraction to the specific victim in the present case. Inferences can be drawn from these statements and events that appellant may—or may not— have committed the charged offense. We conclude the trial court did not abuse its discretion in ruling that these pieces of evidence were relevant.

■ The State offers no argument, however, to show why evidence that appellant had previously been in prison was relevant in proving appellant committed the offense of aggravated sexual assault of a child. The mere fact that appellant has a prior criminal record does not make it more or less likely that he committed the charged offense. An accused is entitled to be tried on the accusations made in the State's pleadings and should not be tried on past criminal behavior. *See Wilkerson v. State,* 736 S.W.2d 656, 659 (Tex.Crim.App.1987). Introduction of this evidence served only to deem appellant a

---

tion at the time he made the oral statements to the investigating officers because he was told he was not under arrest and he exercised his free-

dom to leave after being questioned. Therefore, Article 38.22 is inapplicable to the present case.

criminal generally. Accordingly, we conclude that the trial court abused its discretion in admitting evidence that appellant had been in prison.

### (b) Character Evidence.

■ Having determined the relevancy of the challenged pieces of evidence, we now examine whether the proffered relevant evidence was inadmissible because it was impermissible character evidence or whether it fell within an exception to Rule 404. Rule 404 generally prohibits the use of character evidence to prove commission of the charged offense. Tex.R.Crim.Evid. 404(a). Thus, although relevant, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Tex. R.Crim.Evid. 404(b); *see also Bishop v. State,* 869 S.W.2d 342 (Tex.Crim.App.1993). However, evidence of other crimes, wrongs, or acts may be admitted if such evidence has relevance apart from the tendency to prove the character of the accused. *Montgomery,* 810 S.W.2d at 387. Only those purposes other than propensity, such as those listed in Rule 404(b), will justify otherwise inadmissible character evidence. *Id.* For example, Rule 404 states that evidence of other crimes, wrongs, or acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex.R.Crim.Evid. 404(b). In addition to these listed exceptions, evidence of the context or background in which events transpired that are helpful for the jury to understand a particular transaction may be admissible. The relevant context consists of actions and statements made either at the time of the offense or during arrest. *See Rogers,* 853 S.W.2d at 33 n. 6.

■ There are two forms of background evidence, formerly referred to as "res gestae": (1) "same transaction contextual evidence," which refers to other offenses connected with the primary offense;[4] and (2) "background contextual evidence" which includes all other general background evidence. *Mayes v. State,* 816 S.W.2d 79, 86 (Tex.Crim. App.1991). Same-transaction contextual evidence is admissible as an exception to Rule 404(b) when the evidence is necessary for the state to logically present evidence of the charged offense. *Id.* at 86 n. 4. Thus, "[o]nly if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence, should the same transaction contextual evidence be admitted." *Rogers,* 853 S.W.2d at 33. As a result, evidence of extraneous offenses may, where appropriate, be admissible as same-transaction contextual evidence. *Lockhart v. State,* 847 S.W.2d 568, 570 (Tex.Crim.App.1992), *cert. denied,* — U.S. ——, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993). The trial-court decision whether same-transaction evidence is admissible will not be disturbed on appeal absent an abuse of discretion. *See Blackwell v. State,* 818 S.W.2d 134, 137 (Tex.App.—Waco 1991, pet. ref'd). Background contextual evidence, used to provide flavor to a case and often admitted simply because no one objects to its admission, is not admissible under Rule 404(b) when it includes an impermissible character component. *Mayes,* 816 S.W.2d at 88.

■ In the present case, the State argues that all the challenged evidence was res gestae or background evidence and, therefore, was admissible as an exception under Rule 404(b). The State essentially argues that because the statements made to the investigating officer were voluntary and made while the officers were investigating the present offense, they are therefore same-transaction contextual evidence. Following the State's argument to its logical end, *anything* related to bad character would be admissible if uncovered in a police investigation. We reject this contention. The statements here were not made either during the commission of the offense or during the arrest. Appellant's pre-arrest statements were not so intermixed

---

4. The secondary crimes, offenses, or wrongs and the primary offense must be so "intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." *Mayes v. State,* 816 S.W.2d 79, 86–87 n. 4 (Tex.Crim.App. 1991) (quoting *Nichols v. State,* 97 Tex.Crim. 174, 260 S.W. 1050, 1051 (1924)).

with the facts of the commission of the offense that the State needed to use this evidence for the jury to understand the facts surrounding the offense. The relevant events in the case can be adequately explained without evidence of appellant's bisexuality/homosexuality to render a complete and whole picture for the jury. Appellant's admission of his sexual preference is, therefore, background contextual evidence. Moreover, introduction of this evidence, in the present case, could only serve to send to the jury the message that all homosexual men are also molesters of little boys. Such an inference, unsupported by evidence or logic, is an improper basis for introducing evidence of appellant's sexual preference. Because the evidence has an impermissible character component, we conclude that the trial court abused its discretion in admitting evidence of appellant's sexual preference.

■ We will also assume without deciding that the investigating officer's testimony that appellant appeared to have an erection while being questioned about the victim is not same-transaction contextual evidence, but instead is general background contextual evidence. However, evidence that appellant was sexually aroused while talking about the child could be viewed as giving rise to a logical inference that appellant had feelings of sexual attraction and desire toward him. Such evidence would, therefore, tend to show that appellant had a motive for sexually assaulting the child:

> The sexual passion or desire of X for Y is relevant to show the probability that X did an act realizing that desire. On the principle set out above, this desire at the time in question may be evidenced by proof of its existence at a prior or subsequent time. Its existence at such other time may, of course, be shown by any conduct which is the natural expression of such desire.

*Brown v. State*, 657 S.W.2d 117, 118 (Tex. Crim.App.1983) (quoting McCormick & Ray, *Texas Law of Evidence* 236–37 (3rd ed. 1980)). Thus, the challenged evidence had relevance apart from character conformity. *See* Tex.R.Crim.Evid. 404(b). At the very least, we think such a conclusion would be within the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 390–91. We hold that the trial court did not abuse its discretion in admitting this evidence over appellant's Rule 404(b) objection.

■ Appellant's statements that the child had grabbed appellant's penis, had disrobed and jumped in a wheelbarrow, and was at fault because he was being forward are not same-transaction contextual evidence because they are not indivisibly connected with the charged offense. Assuming they relate to bad acts by appellant at all, the statements are merely examples of admissible background contextual evidence because they fill in gaps in the overall context of the case—the relationship between the accused and the victim—and thus do not introduce an impermissible character element. We conclude that the trial court did not abuse its discretion in admitting this evidence.

### (c) Unfair Prejudice

■ Having determined already that evidence of appellant's past imprisonment and sexual preference were improperly admitted under Rule 401 and Rule 404(b), respectively, we will now consider if the remaining challenged evidence can withstand a Rule 403 analysis. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex.R.Crim.Evid. 403. In one sense, almost every piece of evidence introduced at trial can be said to be prejudicial to one side or the other. Consequently, only evidence that is *unfairly* prejudicial is excluded. Evidence is unfairly prejudicial when its prejudicial nature substantially outweighs its probative value. In balancing whether the prejudicial effect substantially outweighs the probative value of evidence, the presumption is that the probativeness will outweigh any prejudicial effect. *Montgomery*, 810 S.W.2d at 389. So long as the trial court operates within the boundaries of its discretion, its decision will not be disturbed on appeal. *McFarland v.*

*State,* 845 S.W.2d 824, 837 (Tex.Crim.App. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

▆▆▆ As stated above, the investigating officer's testimony that appellant appeared to have an erection while being questioned about the child victim is probative because it raises a reasonable inference that appellant had feelings of sexual desire toward the child. The only unfairness in admitting such evidence is the always-present possibility that the inference of sexual desire toward the child might be incorrect, e.g., appellant's erection might have resulted from something other than sexual desire for the child, or the officer might have been mistaken about appellant's having an erection at all. The mere fact of having an erection, however, is not so inherently prejudicial as to interfere with the jury's logical task of choosing to accept or reject an asserted inference, or choosing between two or more competing inferences. Nor do we think the logical nexus between the evidence and the asserted inference is too weak to be deemed "reasonable." We conclude the trial court did not abuse its discretion in admitting this testimony, because the danger of unfair prejudice did not substantially outweigh its probative value.

▆▆▆ Appellant's statements about the child's grabbing appellant's penis, disrobing and jumping in a wheelbarrow, and being at fault because he was being forward are essentially exculpatory statements. The probative value of the first statement is that it implies that appellant may have had prior sexual contact with the victim. As a result, the prejudicial effect is that the jury could have concluded from this statement that appellant was guilty of the charged offense. However, another inference is that appellant was trying to explain that the child's actions of grabbing appellant's penis and disrobing were not attributable to appellant. The probative value of the second and third statements is to show that on at least one occasion when appellant could have assaulted the child, he instead sent the child home. Yet another possible inference to be drawn from the evidence is that these earlier events, such as when the child disrobed or grabbed appellant's penis, led appellant to desire sexual contact with the victim. Consequently, the evidence may be either advantageous or prejudicial to the State and appellant, depending on the inferences drawn therefrom. We conclude that the statements are not unfairly prejudicial, because they do not suggest an opinion on an improper basis, confuse issues, or mislead the jury. We hold that the trial court did not abuse its discretion in admitting these statements, because their prejudicial effect does not substantially outweigh their probative value.[5]

### (d) Harmfulness

▆▆▆ We have held that the trial court improperly admitted evidence that appellant

---

5. We have already concluded that evidence of appellant's bisexuality/homosexuality was inadmissible character evidence. However, even if that evidence did not violate Rule 404, we would hold that it violated Rule 403. The State urges us to follow *Slayton v. State,* 633 S.W.2d 934 (Tex.App.—Fort Worth 1982, no pet.), where the accused was convicted of indecency with a child. The Fort Worth Court of Appeals concluded that the probative weight of evidence of the defendant's homosexuality outweighed any inflammatory or prejudicial aspects it may have had and held that the admission of such evidence was not error. *Id.* at 938. We decline to follow *Slayton* and rely instead on the Court of Criminal Appeal's decision in *Bishop v. State,* 869 S.W.2d 342 (Tex.Crim.App.1993), in which the court stated:

We have long considered evidence of sexually related misconduct to be inherently inflammatory. Although the evidence in question pertained to practices which are not legally defined as either criminal offenses or misconduct, such practices are considered improper, immoral, and highly offensive by segments of the population and hence testimony linking Appellant to such conduct could have unduly prejudiced some of the jurors against the Appellant.

*Id.* at 346 (citation omitted).

The only possible probative value of appellant's sexual preference would be to suggest that appellant is inclined to choose males as sexual partners and, therefore, may have chosen the male child victim in this case as a sexual partner. As previously discussed in the text, however, this is a highly suspect proposition, unsupported by any evidence. Were it necessary to our decision, therefore, we would conclude that the prejudicial effect of introducing evidence of appellant's sexual preference substantially outweighed any probative value, and that the trial court abused its discretion in admitting this evidence.

was bisexual/homosexual and had previously been in prison. Where the record reveals error in the proceedings below, the appellate court must reverse the conviction under review unless the appellate court determines beyond a reasonable doubt that the evidence made no contribution to the conviction or to the punishment. Tex.R.App.P. 81(b)(2). In determining whether error is harmless under Rule 81(b)(2), we are to focus not on the propriety of the outcome of the case, but instead on the integrity of the process leading to the conviction. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989); Tex. R.App.P. 81(b)(2)). Factors that should be considered include: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the error's probable collateral implications; (5) how much weight a juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris,* 790 S.W.2d at 587.

Procedurally, we must first isolate the error and all its effects, using the considerations set out above and any other considerations suggested by the facts of the cause; second, we must ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* at 587–88. We do not focus on the weight of the other evidence of appellant's guilt, but instead focus on whether the error might possibly have prejudiced the jurors' decision-making. In other words, our responsibility is to determine whether the trial was an essentially fair one. *Id.*

The State was the source of the error here, and the nature of the error was the admission of, on the one hand, irrelevant evidence and, on the other hand, inadmissible character-conformity evidence. The State drew the jurors' attention to the inadmissible evidence by presenting it through the State's first witness, Officer Saldana. Turning to the probable collateral implications of the inadmissible evidence and the weight the jurors would probably place on it, we think the inadmissible evidence may have carried substantial weight in the jury's decision to convict. From the very beginning of the trial,

the inadmissible evidence labeled appellant a criminal and, perhaps in some jurors' minds, a sexual deviate. Thus, all subsequent evidence was viewed through a lens already obscured by references to appellant's prison history and unconventional sexual preference. Placed in the context of a trial for aggravated sexual assault of a child, such evidence was calculated to weigh heavily on the minds of the jurors.

Finally, we conclude that declaring the error in question harmless would encourage the State to repeat it. Evidence of sexual preference and a prior prison record can easily cast a negative light on an accused, so that a weak case looks much stronger in the eyes of a jury. We cannot conclude beyond a reasonable doubt that the erroneous introduction of the evidence of appellant's sexual preference and past prison record made no contribution to his conviction or punishment. Appellant's first point of error is sustained.

## CONCLUSION

In light of the foregoing disposition, points of error three through eight need not be addressed. We reverse the conviction and remand the cause to the trial court for a new trial.

CARROLL, Chief Justice, dissenting.

I respectfully dissent. I believe that the challenged evidence was admissible as a statement against interest under Rule 803(24) of the Texas Rules of Criminal Evidence, and in any event, was harmless under Rule 81(b)(2) of the Texas Rules of Appellate Procedure.

According to the majority, "[e]vidence of sexual preference and a prior prison record can easily cast a negative light on an accused, so that a weak case looks much stronger in the eyes of a jury." I agree. However, I would not call the case on appeal "a weak case," and I also believe we should consider the source of the evidence in question.

Appellant was interviewed by a deputy sheriff. Before a single question was asked, the investigating officer "read him his rights," and expressly advised him that he had "the right to remain silent" and that

"any statement you make may be used against you." *See Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

In the course of the interview, and in the face of these warnings, appellant *volunteered* that he was bisexual/homosexual and that he had been in prison before. He claimed that the little boy had grabbed his penis and that the little boy had disrobed in front of him. Finally, he claimed that the child was at fault because "he was *forward.*" The mere recitation of this story was apparently so exciting to him that he became physically aroused while relating it to a *deputy sheriff.*

Under these unique facts, I would affirm the judgment of conviction.