Affirmed; Opinion of November 17, 2005, Withdrawn; Substitute Opinion
filed January 10, 2006









 

Affirmed; Opinion of November 17, 2005, Withdrawn;
Substitute Opinion filed January 10, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00825-CR

____________

 

CHARLES MICHAEL
WHITMIRE, JR.,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause No. 925,165

 



 

O P I N I O N

 

We
withdraw our opinion of November 17, 2005, and issue this substitute opinion.








A
jury convicted appellant of capital murder and the court imposed an automatic
life sentence.  On appeal, appellant
raises six points of error.  In his first
and second, he challenges the legal and factual sufficiency of the
evidence.  In the third, he challenges
the admissibility of his written confession. 
In his fourth, he challenges the admissibility of evidence relating to a
potential homosexual relationship.  In
the fifth, appellant raises a due process challenge to the State=s use of mutually inconsistent
theories in separate trials of accused co-conspirators.  Finally, appellant challenges the introduction
of certain photographs of the complainant. 

Factual and Procedural Background

On September 22, 2002, appellant, Charles Michael Whitmire,
went to 5431 Firefly in Houston, Texas with two other men, Richard Trent
Schneider and Jason Leon Ray.  According
to appellant=s confession, the three went there to
rob Jason AJay@ Turner of his drugs and money.  While they were there, Turner was fatally
shot once in the head.

Turner lived with his girlfriend, Roxanne Ochoa, in one
bedroom of the Firefly house.  Several
others also resided in the Firefly house, including ASammy Jr.@ 
Appellant also had resided in the house. 
He and Turner had disagreements over appellant=s alleged taking of toilet paper and
unauthorized use of Turner=s car.  As a result of
these arguments, appellant moved out.  

Before the murder, appellant asked Schneider and Ray to go
with him to the Firefly house.  He met
the two through his sister.  In his
confession, appellant admitted to planning the robbery.  Appellant, Schneider and Ray went to the
Firefly house and left after waiting for Turner to return.  While driving away, they saw Turner,
exchanged greetings with him, and returned to the house.  When they re-entered the house, Ray grabbed
Ochoa, held a knife to her head, and either Schneider or appellant shot Turner
between the eyes.  The three neither
demanded nor took any property and promptly left the scene.

When the police questioned appellant about Turner=s murder, he confessed only to
planning the robbery; in a separate interview with police, Schneider confessed
to being the shooter.  Ultimately,
appellant was indicted and tried for the capital murder of Turner.  The jury heard testimony that appellant was
the shooter.  Receiving instruction on
principal, party and conspirator liability, the jury convicted appellant of
capital murder.  The court imposed a life
sentence.








Analysis

I.          Legal
Sufficiency

In his first point of error, appellant alleges the evidence
was legally insufficient to sustain his conviction.  In a legal-sufficiency challenge, we employ
the familiar standard of viewing the evidence in the light most favorable to
the verdict.  King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc).  If any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt, we will
affirm.  Id. 

The court below instructed the jury it could convict
appellant of capital murder on any of three bases: (1) as the principal
shooter; (2) as a party to the offense; or (3) under conspirator
liability.  The jury returned a general
verdict of guilt for capital murder.  We
will affirm if the evidence is sufficient to support the verdict on any of the
bases.  See Rabbani v. State, 847
S.W.2d 555, 558 (Tex. Crim. App. 1992) (en banc).  

Section 19.03 of the Penal Code makes it a capital offense to
intentionally commit murder while in the course of a robbery or attempted robbery.  Tex.
Pen. Code ' 19.03(a)(2).  Even if
a defendant does not commit murder himself, he may be found guilty as a party
to the crime if he acts with the intent to promote or assist in the commission
of the murder.  Tex. Pen. Code ' 7.02(a)(2).  He also may be liable as a conspirator if
there was a conspiracy to commit a robbery and a co-conspirator committed a
reasonably foreseeable murder in furtherance of the conspiracy.  Tex. Pen.
Code ' 7.02(b).  

Appellant argues the jury could not convict because he was
not the shooter, he had no intent to kill Turner, he had no idea Schneider was
armed, and thus he did not know Schneider would kill Turner.  The State need not prove beyond a reasonable
doubt that appellant was the shooter when the jury receives instruction on
party or conspirator liability.  See
Rabbani, 847 S.W.2d at 558; Hernandez v. State, 171 S.W.3d 347, 353
(Tex. App.BHouston [14 Dist.], 2005 no pet.
h.).  Neither is it necessary to prove
intent, only that the murder was foreseeable. 
Tex. Pen. Code ' 7.02(b). 








According to appellant=s confession, he planned to rob
Turner with Schneider and Ray=s help. He enlisted the help of two armed men to rob a
potentially-armed drug dealer.  He and
his co-conspirators returned to the house when they saw Turner return to the
house, indicating Turner was the true reason for their trip.  While at the Firefly house, appellant did not
attempt to stop the confrontation. 
Appellant made no attempt to render aid to Turner and never reported a
crime.  Viewed in the light most
favorable to the verdict, there is ample evidence to support the conviction,
even if appellant did not intend to kill Turner and even if he did not actually
shoot Turner.  It is perfectly
foreseeable that a murder would result from an armed confrontation such as this
one.  The evidence is legally sufficient
to support the conviction and accordingly we overrule appellant=s first point of error.  II.            Factual
Sufficiency

Appellant also raises the issue of factual sufficiency.  When conducting a factual sufficiency review,
we view the evidence in a neutral light and will set the verdict aside only if
the evidence is so weak as to make the verdict clearly wrong and manifestly
unjust, or if the contrary evidence is so strong that the standard of proof,
beyond a reasonable doubt, could not have been met.  Escamilla v. State, 143 S.W.3d 814,
817 (Tex. Crim. App. 2004), cert. denied, 125 S. Ct. 1697 (2005).  Again, we will affirm if the evidence is
sufficient to support the verdict on any of the bases upon which the jury
received instruction.  See Rabbani 847
S.W.2d at 558.  While we have reviewed
the entire record and have considered all evidence presented at trial, we
cannot re-weigh the evidence and supplant the role of the jury to resolve
conflicts in testimony and evaluate witness credibility.  See Swearingen v. State, 101 S.W.3d
89, 97 (Tex. Crim. App. 2003); see also Jackson v. Virginia, 443 U.S.
307, 319 (1979).  The evidence is
factually sufficient as well.  








At trial, appellant testified on his own behalf and contested
the State=s theory that he planned the robbery
and thus could be criminally liable as a conspirator.  Appellant testified that he had no intention
of robbing, much less murdering Turner. 
Rather, completely disavowing his confession, he claimed he simply
needed a ride to the Firefly house in order to meet another occupant, Sammy
Jr., concerning an unfinished tattoo for one of appellant=s acquaintances.  According to appellant, his sister introduced
him to Schneider and Ray the day of the murder and they agreed to give him a
ride.  Also, he testified that the two
must have planned the robbery independently while he slept in the car because
Schneider and Ray were friends. 
Appellant further testified that he had no idea that either Schneider or
Ray were armed.  Based on this testimony,
appellant argues the evidence showed he did not devise the plan to rob Turner,
and played no role whatsoever in killing Turner.  Instead, he simply needed a ride to meet
Sammy Jr. while Schneider and Ray used the opportunity for their own purposes.  Yet, merely offering an alternate theory does
not mandate the jury accept it. 

The jury may reject some or all of a witness=s testimony.  See Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000) (en banc). When presented with an issue of witness
credibility, we do not sit as jurors deciding which witnesses to believe; that
is the jury=s domain. 

Having reviewed all the evidence, we do not find the evidence
too weak to support a jury verdict for capital murder based on conspiracy.  We overrule appellant=s second point of error.

III.      Admissibility
of Written Confession








In his third point of error, appellant
contends his confession was involuntary due to lack of sleep and thus the court
erred by admitting it into evidence. 
When a defendant makes a pretrial challenge to the voluntariness and
admissibility of his confession, the prosecution bears the burden of proving
voluntariness by a preponderance of the evidence.  Lego v. Twomey, 404 U.S. 477, 486
(1972); Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)
(en banc).  The court, outside the
presence of the jury, must conduct a hearing to determine for itself whether
the statement was voluntarily given.  Tex. Code Crim. Proc. art. 38.22
section 6; see Jackson v. Denno, 378 U.S. 368 (1964)
(establishing the procedure for the voluntariness hearing).  Voluntariness is determined considering the totality
of the circumstances.  Creager v.
State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997) (en banc).  We do not disturb the court=s ruling unless
there is a clear abuse of discretion.  Alvarado,
912 S.W.2d at 211.  When, as here, the
determination revolves around historical facts and witness credibility, we give
the court almost total deference.  State
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc) (citing Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc)).

Appellant argued below that he had been
under the influence of ephedrine before police took him to jail.  As a result, he claimed to have had no sleep
for twenty-four hours prior to giving his statement.  Because of this alleged lack of sleep,
appellant contends his statement was not truly voluntary.  His own actions at the jail and trial
testimony belie that assertion.

The trial court heard testimony that
appellant appeared coherent and awake during questioning.  He received all of his warnings and the
police treated him with courtesy and respect. 
When appellant asked for food and drink, they gave it to him.  He did not, however, ask to sleep and there
is no indication in the record that the police purposefully sought to take
advantage of any fatigue.  On the
contrary, appellant and Sergeant Bozeman both testified appellant was asleep
when retrieved for questioning.  Even in
his trial testimony, appellant testified he slept at his sister=s motel room in
the twenty-four hours before the questioning. 
Considering this evidence and evaluating the competing stories, the
court below was justified in finding the confession voluntary and not tainted
by lack of sleep. 

Even had the court below believed
appellant had been sleep deprived, such deprivation would not be enough to
warrant suppression.  See Barney v.
State, 698 S.W.2d 114, 121 (Tex. Crim. App. 1985) (en banc) (holding that
lack of sleep for sixteen hours will not, by itself, render a confession
involuntary).  The evaluation is of the
totality of the circumstances.  Creager,
952 S.W.2d at 855.  Here, lack of sleep
alone is simply not a factor to outweigh all others.  We cannot say that the court abused its
discretion in refusing to suppress the confession.  We overrule appellant=s third point of
error.








IV.      Evidence
of Homosexual Relationship

Appellant=s fourth point of
error challenges questioning regarding whether or not appellant offered to
perform sexual favors on Turner in exchange for forgiveness of a drug
debt.  According to appellant, the
prosecutor engaged in misconduct[1]
by violating the motion in limine when he asked the question about alleged sexual
favors, and the trial court committed reversible error when it overruled the
objection.  We review the admission of
evidence for abuse of discretion.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g) (en banc).  So long as the court=s decision was
within the zone of reasonable disagreement, we will not disturb it on
appeal.  Id.  Because we are reluctant to reverse an
exercise of discretion, we will uphold it if there is any basis to sustain the
court=s ruling, even if
not the basis upon which the court relied. 
See Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)
(en banc) (citations omitted).  

At trial, appellant raised two objections
and he repeats those here.  First, he
argues that the testimony is inadmissible character evidence under Texas Rule
of Evidence 404(b).  Second, he argues that the testimony was more
prejudicial than probative so as to violate Texas Rule of Evidence 403.  We disagree.

Rule 404(b) prohibits the admission of Aother crimes,
wrongs or acts . . . to prove the character of a person in order to show action
in conformity therewith . . . .@  Rule 404(b) also lists several exceptions to
the general prohibition of character evidence. 
While appellant correctly cites Bishop v. State as classifying
sexual relations of this sort as an Aact@ under the rule,
he cannot satisfy the rest of the rule. 
869 S.W.2d 342, 345 (Tex. Crim. App. 1993) (en banc).  The evidence must both describe an Aact@ and be for
the purpose of showing the defendant acted in conformity with that prior
act.  If not shown to be character
evidence as described in the rule, then the evidence is not presumptively
excluded.








Appellant did not below, and does not on
appeal, explain how the evidence served to show some sort of Aaction in
conformity therewith.@ 
Stated differently, there is no indication that the State meant for the
jury to understand that appellant=s possible offer
of sexual favors meant that he acted in conformity with that behavior.  Rather, it was offered and admitted to
impeach appellant=s testimony regarding his relationship
with Turner, the deceased complainant. 
We have reviewed the trial objection and the briefing and conclude that
this is not character evidence falling under Rule 404(b) because it was not
offered to show conformity.

However, the objection under Rule 403
merits greater discussion.  Texas courts
have held that evidence of sexual behavior outside of what society deems
acceptable is inherently inflammatory.  See
Bishop, 869 S.W.2d at 346.  For
evidence to be admitted, it first must be relevant.  See Tex.
R. Evid. 401, 402.  Here,
appellant does not argue that the evidence was irrelevant.  See Tex.
Code Crim. Proc. art. 38.36(a) (allowing evidence of the previous
relationship between defendant and deceased in a murder trial).  Rather, he focuses on the potential for
prejudice as discussed in Rule 403. 
Thus, our analysis concerns whether that relevant evidence nonetheless
should have been excluded because the potential for prejudice substantially
outweighed its probative value.  We start
from the presumption that the probative value outweighs prejudicial
effect.  Montgomery, 810 S.W.2d at
389.








Appellant relies heavily on Bishop
and Blakeney v. State, 911 S.W.2d 508 (Tex. App.CAustin 1995, no
pet.).  Those cases determined that
admitting certain evidence of sexual practices and proclivities was not only
error, but also harmful.  Bishop,
869 S.W.2d at 346-47; Blakeney, 911 S.W.2d at 516B17.  Both are distinguishable.  Both of those cases involved sexual assault
crimes, not capital murder as we have here. 
In Bishop, the court determined that evidence of previous sexual
conduct was unnecessary given the other evidence tying the defendant to the
crime.  869 S.W.2d at 346.  In Blakeney, the court of appeals
reversed because evidence of the defendant=s homosexuality
was irrelevant and served no purpose other than to suggest that all homosexuals
molest young boys.  911 S.W.2d at
515.  Both Bishop and Blakeney
involved valid challenges under Rule 404(b) because the prosecution admitted
evidence of sexual practices to show that the defendants likely acted in
conformity with their sexual histories and preferences.[2]  Further, both cases= holdings rested
squarely on Rule 404(b) violations, not Rule 403.  Neither is persuasive on the facts of this
case because the evidence in question, which included evidence of appellant=s alleged sexual
preference, was not admitted to show that he acted in conformity with that
preference.

This case involves capital murder, not
sexual assault.  As discussed already,
there is no hint that the evidence came in to show appellant acted in
conformity with any homosexual characteristic. 
Rather, the judge ruled the evidence admissible on the basis of
impeachment.  Even if that were not a
correct ruling, the evidence certainly could come in to show the relationship
between appellant and decedent.  See
Tex. Code Crim. Proc. art.
38.36(a) (allowing in evidence as to all relevant facts of the previous
relationship of the accused and deceased in a murder trial).  We cannot say it was unnecessary as in Bishop.  While the prosecutor=s violation of the
motion in limine may have been poor form, prosecutorial misconduct is not
raised.  Further, the exchange involved
only one question regarding the possible exchange of sexual favors for
forgiveness of a drug debt.  Appellant
flatly denied the allegation, and the cross-examination continued on other
matters.  The prosecutor did not dwell on
the allegation in his questioning or closing argument.  Appellant denied any ongoing problems in his
relationship with Turner.  We cannot say
the prejudice outweighed the probative value of the impeachment evidence or
exploring the true nature of appellant and Turner=s
relationship.  

Because we find no merit in appellant=s Rule 404(b) challenge
and he cannot overcome the presumption of admissibility under Rule 403, we
overrule appellant=s fourth point of error.

V.      Due
Process

In his fifth point of error, appellant
urges this Court to reconsider its precedent and hold that a prosecutor
violates a defendant=s Due Process rights[3]
when she argues mutually inconsistent theories of guilt in separate trials of
co-conspirators.  Basing his argument on
one necessarily related to collateral estoppel, appellant argues it is Afundamentally
unfair@ to convict two
men of being the shooter of only one fatal shot.  See generally Smith v. Groose, 205
F.3d 1045, 1051 (8th Cir. 2000) (holding that arguing factually contradictory
theories to get multiple convictions is fundamentally unfair and a denial of
due process); contra Nichols v. Scott, 69 F.3d 1255, 1270 (5th Cir.
1995) (declining to apply collateral estoppel to criminal prosecutions of
different defendants).  However, this
argument is waived.

To preserve error for appeal of alleged
improper jury argument, a party must both object and pursue that objection to
an adverse ruling.  Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc).  If the judge refuses to rule on the
objection, then an appellant may still preserve error by objecting to the
refusal.  Tex. R. App. P. 33.1(a)(2)(B); Geuder v. State, 115
S.W.3d 11, 13 (Tex. Crim. App. 2003). 
Here, appellant objected to the jury argument, but did not pursue that
to an adverse ruling.  He made his
objection and the judge ordered trial counsel to Asit down@ and said that he
could put the objection on the record later. 
Appellant did not object to the court=s failure to rule,
and though he did make the due process objection later, he did so only after
the jury had retired and the judge could not cure any alleged error.  That is not enough to preserve error.  Appellant either must secure an adverse
ruling at a time when the judge may correct the problem by issuing an
instruction to disregard, or must object to the judge=s refusal to rule
on the objection.  Without an adverse
ruling or an objection to the judge=s refusal to rule,
there is no error preserved for our review. 
Cockrell, 933 S.W.2d at 89.   








VI.      Photographic
Evidence

In a final point of error, appellant
argues that the court erroneously entered a photograph into evidence over
objection that it is grisly, gruesome, and is repetitive of another
photograph.  Again, the standard for reviewing
the court=s admission of this evidence over a Rule
403 objection is abuse of discretion.  If
the decision to admit was within the zone of reasonable disagreement, we will
not reverse.  The Court of Criminal
Appeals has laid out several factors, though not exclusive, to consider when
evaluating photographic evidence of this sort. Narvaiz v. State, 840
S.W.2d 415, 429 (Tex. Crim. App. 1992) (en banc) (citing Long v. State,
823 S.W.2d 259, 272 (Tex. Crim. App. 1991) (en banc)).  A court is to consider gruesomeness, detail,
size, whether in color or black and white, whether close-up, and whether the
body is naked or clothed.  So long as the
court concludes the evidence is relevant and the jury will not resolve issues
on an inappropriate emotional basis, the evidence is admissible.  Id.

The photograph is of Turner=s head after the
shooting.  It is a close-up of the face
showing the bullet entry.  After
reviewing the record, we find no actual reference to the photograph in
testimony, though the court admitted it. 
Recalling that we presume probative value to outweigh any prejudicial
effect, Montgomery, 810 S.W.2d at 389, we cannot say the picture
inflamed the jurors to convict on an irrational basis.  The factors do not weigh in favor of
appellant=s argument.  From what we can tell, it was not enlarged or
changed in any way.  Though it is in
color and shows the entry wound, the photograph is not gory or gruesome.  The evidence was relevant and certainly could
have aided the jury in understanding the testimony regarding the wound and
complainant=s death. 
Additionally, given that it appears to have been ignored during
testimony, we cannot understand how it was repetitive or could have caused
unfair prejudice.  The prosecutor
evidently did not refer to the picture even in his closing.  Neither did the prosecutor use it in an
inappropriate way.  Appellant=s sixth point of
error is overruled.

 








Conclusion

We overrule each of appellant=s issues and
affirm the trial court=s judgment.

 

 

 

 

 

 

 

 

/s/      Wanda
McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Opinion filed January 10, 2006.

Panel consists of
Justices Fowler, Frost, and Guzman.

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Appellant
raises alleged prosecutorial misconduct as only a factor to consider in our
weighing of prejudice, but we do not read his briefs as raising a separate
point of error on the basis of alleged prosecutorial misconduct.  Additionally, appellant cites no authority
for the proposition that prosecutorial misconduct is a factor when considering
a Rule 403 challenge.





[2]  Blakeney
is not binding upon this Court, and while we acknowledge that the challenge
raised in that case fell under the general purview of Rule 404(b), we express
no opinion as to the correctness of that decision.





[3]  Although
appellant references both the United States and Texas Constitutions= protection of due process on appeal, he made no
specific reference at trial as to which supported his claim.