

# NUMBER 13-11-00213-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI—EDINBURG

_____

**PAUL WAYNE SMIKAL,** <span>**Appellant,**</span>

**v.**

**THE STATE OF TEXAS,** <span>**Appellee.**</span>

**On appeal from the 75th District Court
of Liberty County, Texas**

_____

# MEMORANDUM OPINION

**Before Justices Rodriguez, Vela, and Perkes
Memorandum Opinion by Justice Perkes**

Appellant, Paul Wayne Smikal, appeals his conviction for two counts of indecency

with a child by sexual contact, a second-degree felony.[1]  *See* TEX. PENAL CODE ANN. §

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this case is before us on transfer from the Ninth Court of Appeals in Beaumont, Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

21.11 (West 2011). After a jury trial, the trial court sentenced appellant on each count to ten years of confinement in the Texas Department of Criminal Justice—Institutional Division. The two ten-year sentences were ordered to run consecutively.

By two issues, appellant argues that the trial court erred: (1) by admitting into evidence a clinical psychologist's testimony concerning the frequency of false accusations of child sexual abuse; and (2) by denying appellant's request to present evidence supporting an "alternative perpetrator" defense. We affirm.

## I. FACTUAL BACKGROUND

On July 4, 2009, the complainants' mother left her sons, N.S. and W.S. ("complainants"), with appellant overnight while she went out to drink.[2] Both of the boys were under seven years of age at the time. When she returned to check on the boys, they told her that appellant had touched their "wee" and "butt" while they were "butt naked" on appellant's bed.

Less than two weeks later, the complainants were brought to Bridgehaven Children's Advocacy Center for forensic interviews during which they again disclosed that appellant had touched them inappropriately. Later the same day, each complainant received a Sexual Assault Nurse's Examination at St. Elizabeth Hospital in Beaumont, Texas.

A St. Elizabeth's nurse performed the examinations. One of the complainants told the nurse that "Paul stick something in my butt a piece of wood. He touched my wee," and pointed to his penis. The other complainant told her, "Paul been sticking a piece of wood in my butt. He said, 'Did that feel good?,' and I said no, and then I punched him. He

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4. We use the pseudonyms "N.S." and "W.S." to conceal the identities of the minor victims.

pulled my pants down. He put a nail in my butt, and that hurt more. He's [sic] been bad to me all week. He hit me with a stick right here," and pointed to a bruise on his left thigh.

The State presented outcry evidence through the complainants' mother. Although the complainants suffer developmental delays, both complainants testified at trial.[3] Don Neyland of the Liberty County Sheriff's Office interviewed appellant and, during the interview, appellant made statements confirming that the complainants had been in his bedroom, that they were in their underwear, and that they had seen pornographic material in his bedroom. Appellant told Neyland that the complainants were touching each other inappropriately.

At trial, the State called Lawrence Thompson, Ph.D., as an expert witness. Dr. Thompson was a clinical psychologist and the director of the Harris County Children's Advocacy Center. He testified concerning his knowledge of and experience with victims of child sexual abuse, including symptoms of abuse and delay in outcry. Dr. Thompson also explained to the jury that due to inexperience and lack of vocabulary, a child who has been anally raped may describe that he was hurt with an object such as a knife.

At the end of the State's direct examination of Dr. Thompson, the following exchange occurred concerning the frequency of false accusations of child sexual abuse:

| STATE: | In all your experience dealing with children and for the number of years you have and everything that you have learned through your research, false accusations of child abuse, child sexual abuse, how common or uncommon are there actually false accusations? |
|---|---|
| APPELLANT:[4] | Judge, I object to this line of questioning. She's asking to give credibility to an entire population of allegations. |

---

[3] The record shows that due to developmental delays, each complainant acted about a year younger than his chronological age, but each complainant demonstrated the ability to differentiate between telling the truth and lying.

[4] For the sake of clarity, we note that appellant acted through his trial counsel in addressing the admissibility of Dr. Thompson's testimony.

3

| | |
|---|---|
| STATE: | I can limit it to his experience, Your Honor. |
| COURT: | It's my understanding that the question seeks an opinion from this witness who I believe is qualified to express an opinion. |
| APPELLANT: | Is my objection overruled, Your Honor? |
| COURT: | Restate your objection. |
| APPELLANT: | Judge, I am objecting on the grounds that he's lending credibility to an entire group of people of which the two children aren't members of here. |
| COURT: | Your objection is overruled. |
| STATE: | In your experience, doctor, the instances of false accusations of child sex abuse, how frequently in your experience? |
| DR. THOMPSON: | In my clinical experience I could say that I have seen it. I have seen it in no more than 2 percent of the cases that I have actually worked with or supervised the work of others in. |

After the State rested, appellant called several witnesses to testify in his defense. The trial court, however, did not allow appellant to present testimony through the complainants' mother suggesting that a friend of hers, who was a convicted sex offender, committed the offenses.

## II.  ANALYSIS

### A.  Testimony Concerning Frequency of False Accusations

By his first issue, appellant argues the trial court erred by allowing Dr. Thompson to testify that he had only seen false accusations of child sexual abuse in two percent of the cases in which he had been involved.  Appellant argues, without citation to legal authority, that he preserved this issue for appellate review because "a proper objection was overruled."  In its response, the State sets forth its position "[a]ssuming" appellant preserved error.

4

Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion. *See Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007) (citing *Jones v. State*, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997)). Generally, to preserve a complaint concerning the admission of evidence for appellate review, a timely, specific objection must be made in the trial court. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1). When, in response to an objection, the State rephrases a question and no objection is made to the rephrased question, there is no adverse ruling in the trial court to complain about on appeal. *Grant v. State*, 345 S.W.3d 509, 513 (Tex. App.—Waco 2011, pet. ref'd.); *Nanez v. State*, 179 S.W.3d 149, 151 (Tex. App.—Amarillo 2005, no pet.); *Moreno v. State*, 1 S.W.3d 846, 857 (Tex. App.—Corpus Christi 1999, pet. ref'd.).

Appellant failed to preserve his first issue for appellate review because after he objected to the initial question posed to Dr. Thompson, the State rephrased its question and appellant did not object to the rephrased question that Dr. Thompson answered. Accordingly, appellant's first issue is overruled.

## B. Alternative-Perpetrator Defense

By his second issue, appellant argues the trial court erred when it denied him the opportunity to present evidence suggesting that Dennis Yarter, a convicted sex offender, committed the offenses. The record shows the trial court excluded the evidence because it found it irrelevant, particularly because identity was not in issue. Appellant argues the exclusion of this evidence violated his right to due process.

A trial court's ruling on the admissibility of evidence is reviewed under an abuse-of-discretion standard. *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). "'Relevant evidence' means evidence having any tendency to make the existence of any

fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401; *Blakeney v. State*, 911 S.W.2d 508, 513 (Tex. App.—Austin 1995, no pet.) (discussing relevance).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process Clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Kelly v. State*, 321 S.W.3d 583, 592 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). But to be admissible, evidence of an alleged alternative perpetrator must be sufficient, alone or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged alternative perpetrator. *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002); *Michaelwicz v. State*, 186 S.W.3d 601, 617 (Tex. App.—Austin 2006, pet. ref'd.). Weak, speculative evidence that another person may have committed the crime is inadmissible and poses a great threat of confusing the issues in a trial. *See Wiley*, 74 S.W.3d at 406–07; *Michaelwicz*, 186 S.W.3d at 618.

In *Wiley,* the defendant was charged with burning down his own restaurant. 74 S.W.3d at 403, 405. Wiley sought to introduce evidence that another person, a known "fire-starter," had been ejected from the restaurant a few days prior to the fire for acting crazy, striking matches, and removing his shirt. *Id.* He also wanted to present evidence that the "fire-starter" was seen across the street from the restaurant when it burned. *Id.* at 405. The record, however, showed this alleged alternative perpetrator likely lacked the intellectual capacity to plan and execute the fire. *Id.* at 404. So, Wiley instead sought to raise the possibility this third person may have acted in concert with another arsonist. *Id.* at 407.

6

The Texas Court of Criminal Appeals concluded the trial court properly excluded Wiley's proffered evidence under Texas Rule of Evidence 403. *See id.*; TEX. R. EVID. 403. The court explained admission of the speculative alternative-perpetrator evidence "would have forced the State to attempt to disprove the nebulous allegation that perhaps [the other individual] was somehow involved as an assistant to some unknown sophisticated arsonist." *Wiley*, 74 S.W.3d at 407. Such evidence would have resulted in a "side trial," turning the jury's focus away from deciding the only issue in the case—whether Wiley had set the fire—and toward speculating whether an individual who was not on trial may have been guilty. *Id.*

In an offer of proof outside the jury's presence, appellant presented testimony from the complainants' mother concerning Dennis Yarter. However, none of the testimony linked Yarter to the offenses for which appellant was on trial. The mother testified that Yarter was a friend of hers and a handyman with whom she had worked in the past. The mother testified she knew Yarter was a convicted sex offender. The mother explained that she was required to take a special "chaperone class" because she was in regular contact with Yarter and had children of her own. She also testified generally that she spoke to her children about inappropriate touching and told them to tell her about it if it occurred.

The mother admitted that for about two days and two nights, she stayed with her sons in a recreational vehicle ("RV") on Yarter's property, but denied that she ever left her sons alone with Yarter. The mother testified that her sons did not leave her sight when they visited Yarter. She also testified that Yarter did not possess any pornographic materials and that there were no pornographic materials in the RV. The mother testified she could not recall whether she and her sons stayed with Yarter immediately prior to July 4, 2009, when she left her sons with appellant.

7

The mother admitted that she left her sons with appellant so that she could go drink in Yarter's RV. She also admitted that she often borrowed Yarter's truck though this left Yarter without any transportation. After the offenses at issue in this case occurred, the mother was still in contact with Yarter, and she drove his truck to appellant's home when she came to pick her sons up from appellant. She further testified that Yarter's parole was revoked because he was in proximity to her sons, which violated his parole conditions.

We cannot conclude that the trial court abused its discretion by excluding the testimony about Yarter because the testimony is irrelevant to the issue of whether appellant committed the offenses with which he was charged. Nothing links Yarter to the offenses for which appellant was being tried. *See* TEX. R. EVID. 401; *Wiley*, 74 S.W.3d at 406–07; *Michaelwicz*, 186 S.W.3d at 618. We overrule appellant's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

_____
Gregory T. Perkes
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of April, 2012.

8